UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR.,<br><br>                    Petitioner,<br><br>        v.<br><br>TIM RICHARDSON,<br><br>                    Respondent. | Case No. 1:22-cv-00452-BLW<br><br>**<u>CAPITAL CASE</u>**<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS** |

Habeas corpus petitioner Gerald Ross Pizzuto, Jr., is an Idaho prisoner under death sentences for the brutal 1985 murders of Berta Louise Herndon and her nephew, Delbert Dean Herndon. The Petition[1] alleges a single claim arising from Pizzuto's clemency proceedings and his later judicial challenge to those proceedings. A majority of the Idaho Commission of Pardons and Parole (the "Commission") voted to recommend to Governor Little that Pizzuto's death sentences be commuted to life in prison without the possibility of parole. The Governor rejected the recommendation.

---

[1] Pizzuto has twice previously (and unsuccessfully) sought federal habeas corpus relief. *See Pizzuto v. Yordy*, 947 F.3d 510 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 661 (Nov. 02, 2020); *Pizzuto v. Ramirez*, 783 F.3d 1171 (9th Cir. 2015) (appeal from denial of motions for relief from judgment); *Pizzuto v. Arave*, 280 F.3d 949 (9th Cir. 2002), *opinion amended and superseded in part*, 385 F.3d 1247 (9th Cir. 2004), *cert. denied sub nom. Pizzuto v. Fisher*, 126 S. Ct. 546 (Oct. 31, 2005).

Pizzuto challenged the Governor's decision in Idaho state court, asserting that the Idaho statute requiring the Governor's approval of the Commission's clemency recommendation violated the Idaho State Constitution. Though Pizzuto prevailed at the state district court level, the Idaho Supreme Court rejected the claim.

Pizzuto asserts that the Idaho Supreme Court's rejection of his state constitutional and statutory claim violates his right to due process—specifically, he argues the Idaho Supreme Court "unanimously recognized that the Commission … has the power under the state constitution to commute death sentences, and yet has deprived [Pizzuto] of a commutation despite a majority vote by the Commissioners for life." *Pet*., Dkt. 1, at ¶ 7.

Now pending is the State's Motion for Summary Dismissal, in which the State argues the Petition must be summarily dismissed because Pizzuto's claim is procedurally defaulted and noncognizable. For the reasons that follow, the Court concludes that the claim is not procedurally defaulted. However, the claim is a disguised state law claim and, consequently, cannot be heard in federal habeas corpus. Finally, even if the claim were cognizable, it fails on the merits under the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA").

# BACKGROUND

In Idaho, the decision whether to grant clemency is exercised within the executive branch. The Governor appoints the seven members of the Commission, and the state constitution grants the clemency power to the Commission. The Idaho Constitution provides as follows:

> [The Commission] or a majority thereof, shall have power to remit fines and forfeitures, and, *only as provided by statute*, to grant commutations and pardons after conviction and judgment, either absolutely or upon such conditions as they may impose in all cases of offenses against the state except treason or conviction on impeachment.

Idaho Const., Art. IV, § 7 (emphasis added). The "only as provided by statute" language was added in a 1986 constitutional amendment. The intention and effect of this language was to institute a legislative component into the State's clemency process. *State v. Pizzuto*, 518 P.3d 796, 800 (Idaho 2022), *reh'g denied* (Oct. 28, 2022).

Pursuant to the authority granted by the 1986 amendment, the Idaho Legislature enacted Idaho Code § 20-1016. That statute provides as follows:

> (1) The commission shall have full and final authority to grant commutations and pardons after conviction and judgment in all cases of offenses against the state except treason or impeachment and as otherwise provided in this section.
>
> (2) *The commission shall have authority to grant commutations and pardons after conviction and*

MEMORANDUM DECISION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS - 3

*judgment for offenses*, or conspiracies to commit any offense, *for which the maximum punishment allowed by law at the time of sentencing is death or life imprisonment only after first presenting a recommendation to the governor*. If the governor approves the commission's recommendation within thirty (30) days of presentment, the commission's pardon or commutation shall issue. *If the governor rejects the commission's recommendation* within thirty (30) days of presentment or takes no action on the recommendation before the passage of thirty (30) days from presentment, *no pardon or commutation shall issue from the commission, and the commission's recommendation shall be of no force or effect*.

(3) Notwithstanding subsection (2) of this section, the commission shall have full and final authority to grant pardons and commutations for:

> (a) Any offense, or conspiracies to commit any offense, in violation of chapter 27, title 37, Idaho Code, for which the maximum punishment allowed by law at the time of sentencing is life imprisonment; and

> (b) Any offense, or conspiracies to commit any offense, for which the maximum punishment allowed by law at the time of sentencing is enhanced by chapter 25, title 19, Idaho Code, to life imprisonment.

Idaho Code § 20-1016.

That is, the Commission has full and final authority to grant clemency in cases other than those in which the two most severe penalties may be imposed. However, in cases in which a sentence of death or life imprisonment can be

imposed, a majority vote for commutation by the Commission has no effect unless it is also approved by the Governor.

In 2022, a majority of the Commissioners voted to recommend to Governor Little that Pizzuto's death sentences be commuted to sentences of fixed life imprisonment. Pursuant to § 20-1016, the Governor rejected the recommendation. *Pizzuto*, 518 P.3d at 799.

Pizzuto challenged the Governor's decision in Idaho state court by filing (1) a successive post-conviction petition and (2) a motion to correct his sentence under Idaho Criminal Rule 35. The trial court agreed with Pizzuto that § 20-1016 violated Article VI, section 7. *Id.*

On consolidated appeal, the Idaho Supreme Court reversed. A majority of that court, interpreting the Idaho State Constitution and Idaho statutes, held that the process provided for in § 20-1016—requiring the Governor to approve the Commission's recommendation for commutation in cases where the maximum sentence is death or life imprisonment—does not violate the Article IV, section 7 of the Idaho Constitution. *Id.* at 807.

Two of the five justices filed a concurring opinion. These justices would have found that § 20-1016 violated Article IV, section 7. In the view of the concurrence, however, this constitutional infirmity rendered the Commission's clemency authority ineffective. *Id.* at 811 (Horton, J. pro tem., concurring)

("Although I disagree with the Court's conclusion regarding the constitutionality of subsection (2), I concur in the result reached by the Court because I do not believe that there is an effective statute authorizing the Commission to commute Pizzuto's sentence.").

Petitioner filed a petition for rehearing, arguing for the first time that the Idaho clemency process violated the Due Process Clause. Specifically, Pizzuto claimed that the Idaho Supreme Court's *interpretation* of the state constitution and state statute deprived him of due process. *State's Lodging C-29*. The Idaho Supreme Court denied rehearing.

## DISCUSSION

### 1.    Pizzuto's Claim Is Not Procedurally Defaulted

In its Initial Review Order, the Court noted that Pizzuto's claim might be procedurally defaulted. Petitioner raised a federal due process claim with respect to the Governor's denial of clemency for the first time on rehearing before the Idaho Supreme Court, and Idaho courts have a consistent, regularly applied rule of not addressing claims that were not raised below. *See Init. Rev. Order*, Dkt. 28, at 4–5. However, after careful consideration, the Court concludes that the Idaho Supreme Court denied Pizzuto's current claim on the merits.

### A.      Standards of Law

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

Raising a claim "for the first and only time in a procedural context in which its merits will not be considered" except in rare circumstances does not constitute fair presentation. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). In addition, presenting a state law claim does not properly exhaust a federal claim, even if the state and federal claims are similar. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam).

General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). For proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161–62. Claims are also considered procedurally defaulted when, although they were presented to the state court, were held by that court to be procedurally barred, so long as the procedural rule relied upon by the state court is adequate to support the state court's judgment and independent of federal law. *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

**B.     *The Idaho Supreme Court Denied Pizzuto's Claim on the Merits, Not Based on a State Procedural Bar***

In state court, Pizzuto claimed that § 20-1016 violates Article IV, section 7 of the Idaho Constitution. Pizzuto did not raise a federal claim. The Idaho Supreme Court disagreed with Pizzuto's state law argument and concluded that § 20-1016 was a lawful exercise of the legislature's authority, as granted by the 1986 amendment to that statute, under Article IV, section 7 of the Idaho Constitution.

Pizzuto filed a petition for rehearing, asserting that the Idaho Supreme

Court's opinion constituted a federal due process violation. The state supreme

court denied rehearing without explanation. *State's Lodging C-30*.

There is no reasoning provided by any state court as to whether the Idaho

Supreme Court's interpretation of the Idaho Constitution and statutes violates due

process. As a result, the Court presumes that the state court adjudicated the claims

on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal

claim has been presented to a state court and the state court has denied relief, it

may be presumed that the state court adjudicated the claim on the merits in the

absence of any indication or state-law procedural principles to the contrary.").

The State has not rebutted the *Richter* presumption. Petitioner has submitted

evidence that the Idaho Supreme Court has granted rehearing on at least one

similar claim in another capital case. *See Dunlap v. Idaho*, Dkt. No. 47179-2019

(Idaho March 18, 2022), Ex. 1, Dkt. 37-1. In that case, the petitioner argued for the

first time in a petition for rehearing that the Idaho Supreme Court's opinion

violated the Due Process Clause. The state supreme court's grant of rehearing in

*Dunlap* shows that they did not apply a procedural bar to avoid addressing the due

process claim.

Therefore, the Court rejects Respondent's argument that the claim is

procedurally defaulted. The *Richter* presumption has not been rebutted, and the

Court thus concludes that the Idaho Supreme Court rejected Pizzuto's instant

habeas claim on the merits.

## 2.    Pizzuto's Claim Is Not Cognizable

Though Pizzuto attempts to shoehorn his state law claim into a federal due

process claim, the claim remains—at bottom—a challenge to a state court's

interpretation of state law. Such claims are not cognizable in federal habeas except

in extremely rare circumstances, and Petitioner has not established such

circumstances in this case.

### A.    *Standards of Law*

Federal habeas corpus relief is available to prisoners who are held in custody

under a state court judgment that violates the Constitution, laws, or treaties of the

United States. *See* 28 U.S.C. § 2254(a). Habeas relief is not available for violations

of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Further, a challenge to a state court's interpretation of state law is generally

not cognizable in a federal habeas corpus case. The Supreme Court has "repeatedly

held that a state court's interpretation of state law, including one announced on

direct appeal of the challenged conviction, binds a federal court sitting in habeas

corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).

It is only in the rarest of circumstances that a federal court may review a

state court's interpretation of state law. Such review is permissible only if the state

court's interpretation (1) is "untenable," meaning incapable of being maintained or

supported, or (2) "amounts to a subterfuge to avoid federal review of a

constitutional violation." *Taylor v. Kincheloe*, 920 F.2d 599, 609 (9th Cir. 1990). A

petitioner cannot state a cognizable federal habeas claim that a state court

misinterpreted its own laws simply by invoking the Due Process Clause. *Langford*

*v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[Petitioner] may not … transform a

state-law issue into a federal one merely by asserting a violation of due process.").

> **B.    *Pizzuto's Claim Is a Disguised State Law Claim and, Therefore, Cannot Be Heard on Federal Habeas Review***

The Idaho Supreme Court ruled that § 20-1016 does not violate Article IV,

section 7 of the Idaho Constitution because the 1986 amendment expressly granted

the legislature the power to require gubernatorial approval of the Commission's

recommendation for clemency:

> After carefully considering the positions of both
> sides, we conclude that Idaho Code section 20-1016 is
> not in conflict with Article IV, section 7 of the Idaho
> Constitution. In 1986, Idaho voters gave the legislature
> authority to determine the parameters of how
> commutations are granted. Therefore, *while the*
> *commutation power remains wholly vested in the*
> *executive branch through the Commission, the 1986*
> *amendment to the Constitution is clear that the*
> *legislature now determines how that power operates.*
> *This allowed the legislature to include an additional*
> *requirement of gubernatorial approval* for the
> commutation of capital offenses. I.C. § 20-1016.

*Pizzuto*, 518 P.3d at 807–08 (emphasis added).

MEMORANDUM DECISION AND ORDER DISMISSING PETITION FOR WRIT OF
HABEAS CORPUS - 11

Pizzuto vigorously attempts to transform this simple question of state constitutional and state statutory interpretation into a federal due process question by arguing that the state supreme court "unanimously recognized that the Commission … has the power under the state constitution to commute death sentences, and yet has deprived [Pizzuto] of a commutation despite a majority vote by the Commissioners for life." *Pet.*, Dkt. 1, at ¶ 7. This is certainly a creative characterization of the Idaho Supreme Court's decision, but it is ultimately unpersuasive.

The state supreme court engaged in a "straightforward question of [Idaho state] constitutional and statutory construction." *Pizzuto*, 518 P.3d at 801. Pizzuto's entire claim is based on the premise that the Idaho Supreme Court incorrectly concluded § 20-1016 is consistent with the Idaho Constitution. The Idaho Supreme Court's majority opinion is well-reasoned, and its interpretation of Idaho state law is neither untenable nor a subterfuge to avoid federal review. *See Taylor*, 920 F.2d at 609. As a result, Pizzuto's attempt to recharacterize a state law claim into a federal constitutional claim fails.

Slapping a "due process" label onto a challenge to Idaho state law is not sufficient to state a cognizable federal constitutional claim. The Petition is subject to dismissal because Pizzuto's only claim is noncognizable in federal habeas corpus.

**3.      Pizzuto's Due Process Claim Fails on the Merits under 28 U.S.C. § 2254(d)**

Finally, though the parties have not fully briefed the issue, even if Pizzuto's claim were cognizable on federal habeas review, the claim would patently fail under AEDPA.

   **A.      *Standards of Law***

If the state court has adjudicated a federal claim on the merits, habeas relief is strictly limited by § 2254(d), as amended by AEDPA. Under AEDPA, federal habeas relief must be denied unless the state court's adjudication of the petitioner's claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The term "unreasonable" in § 2254(d) is reserved for "extreme malfunctions in the state criminal justice system," not for "ordinary error" or even for cases "where the petitioner offers a strong case for relief." *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (per curiam) (internal quotation marks omitted). Accordingly, a federal court reviewing a state court's adjudication of a claim on the merits "must

carefully consider all the reasons and evidence supporting the state court's decision." *Id*.

Courts are not permitted "to essentially evaluate the merits *de novo* by omitting inconvenient details from its analysis." *Id*. (internal quotation marks and alteration omitted). Instead, "[d]eciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (internal quotation marks and citations omitted).

When no state court decision has explained the rationale behind rejecting a claim, the reviewing federal district court must "conduct an independent review of the record to determine what arguments or theories could have supported the state court's decision"; the court must then determine whether fair-minded jurists "could disagree that those arguments or theories are inconsistent with the holding in a decision of the Supreme Court." *Bemore v. Chappell*, 788 F.3d 1151, 1161 (9th Cir. 2015) (internal quotation marks and alterations omitted); *see also Rowland v. Chappell*, 876 F.3d 1174, 1181 (9th Cir. 2017) ("Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by

which we can determine whether a silent state court decision is objectively

unreasonable." (internal quotation marks and citation omitted)). A summary

decision of a state court is entitled to "meaningful deference," and a federal court

must "consider reasonable grounds that could have supported" that decision.

*Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (per curiam).

When a petitioner contests the state court's legal conclusions, including

application of the law to the facts, § 2254(d)(1) governs. That section consists of

two tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly

established federal law "if the state court applies a rule different from the

governing law set forth in [the Supreme Court's] cases, or if it decides a case

differently than [the Supreme Court] [has] done on a set of materially

indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second

test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner

must show that the state court—although identifying "the correct governing legal

rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to

the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362,

407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state

court unreasonably applies [Supreme Court] precedent; it does not require state

courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (emphasis omitted).

The AEDPA standard is extraordinarily high, and a federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong. Rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Williams*, 529 U.S. at 411. If there is *any* possibility that fair-minded jurists could disagree on the correctness of the state court's decision, § 2254(d)(1) precludes relief. *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013); *Richter*, 562 U.S. at 101–02. In other words, if one fair-minded jurist could conclude that the state court's decision is reasonable, habeas relief must be denied—even other fair-minded jurists would disagree.

"Clearly established federal law" means the governing legal principles set forth in the holdings—not the dicta—of the United States Supreme Court, as of the time the state court rendered its decision. *Williams*, 529 U.S. at 412. The habeas statute does not require an *identical* factual pattern before a legal rule must be applied. Rather, state courts must reasonably apply the rules squarely established by the Supreme Court's holdings to the facts of each case. *See White*, 572 U.S. at 427.

On the other hand, if a court must *extend* a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state court's decision. *Id*. at 407. A federal habeas court "may not overrule a state court for … holding a view different from its own" when the precedent from the Supreme Court "is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). Although circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent, *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000), a federal court may not use circuit law to refine or sharpen a general principle of Supreme Court habeas corpus jurisprudence into a specific legal rule that the Supreme Court itself has not announced, *Lopez v. Smith*, 574 U.S. 1, 7 (2014).

If no Supreme Court decision has confronted the specific question presented by a state prisoner's federal habeas petition—that is, if the circumstances of a petitioner's case are only generally similar to the Supreme Court's precedents—then the state court's decision cannot be "contrary to" any holding from the Supreme Court. *Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam). By the same token, a state court cannot unreasonably apply established federal law that does not exist. *See, e.g., Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). Instead, state court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Kirkpatrick v. Chappell*, 950 F.3d 1118, 1131 (9th Cir. 2020) (holding that § 2254(e)(1) "appears to apply to all factual determinations made by state courts"). "If reasonable minds reviewing the record might disagree about the finding in question," the finding is not unreasonable under § 2254(d)(2). *Pizzuto v. Yordy*, 947 F.3d 510, 530 (9th Cir. 2019) (internal quotation marks and alterations omitted).

**B.**  **The Idaho Supreme Court's Rejection of Pizzuto's Claim Was Not Contrary to, or an Unreasonable Application of, Clearly Established U.S. Supreme Court Precedent, Nor Was It Based on an Unreasonable Determination of the Facts**

Because pardons and commutations fit squarely within the authority of a state's executive branch, clemency proceedings "are rarely, if ever, appropriate for judicial review." *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). In rare cases, however, such review may be proper.

The clearly established law applicable to due process in state clemency proceedings is set forth in *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998). The *Woodard* opinions are fractured. In a plurality opinion, Chief Justice Rehnquist suggested that death-sentenced inmates received all the process they were due at trial and sentencing. Therefore, there should be no due process right involved in clemency at all—though a condemned inmate may have "a residual life interest," for example, in "not being summarily executed by prison guards." *Id*. at 281 (plurality). The Chief Justice's suggestion was joined by three other Justices.

Justice O'Connor, also joined by three other Justices, wrote a concurring opinion. She disagreed with the Chief Justice's suggestion that the Due Process Clause "provides no constitutional safeguards" in clemency proceedings. Instead, she wrote that "some *minimal* procedural safeguards" are required in such proceedings. *Id*. at 288 (O'Connor, J., concurring). Justice O'Connor gave the following examples of a due process violation in clemency proceedings: (1) where

"a state official flipped a coin to determine whether to grant clemency," or

(2) "where the State arbitrarily denied a prisoner any access to its clemency

process." *Id*. at 289.

      Justice Stevens, writing for himself alone, agreed with Justice O'Conner that

due process requires some procedural safeguards during clemency proceedings.

Justice Stevens, however, would have gone further. He suggested that "procedures

infected by bribery, personal or political animosity, or the deliberate fabrication of

false evidence" in a clemency proceeding could violate the Due Process Clause. *Id*.

at 290–91 (Stevens, J., concurring in part and dissenting in part).

      Justice O'Connor's opinion that some minimal due process safeguards are

required in clemency proceedings, which was joined by the three concurring

Justices as well as Justice Stevens, is the controlling law regarding due process in

clemency proceedings. *See Marks v. United States*, 430 U.S. 188, 193 (1977)

(stating that, in a case in which the opinions are fractured, "the holding of the

Court may be viewed as that position taken by those Members who concurred in

the judgments on the narrowest grounds") (internal quotation marks omitted).

Other than Justice O'Connor's examples of flipping a coin or arbitrarily denying

all access to clemency proceedings, however, there is no Supreme Court guidance

regarding precisely what clemency procedures are required by the Due Process

Clause.

Therefore, there is no Supreme Court precedent establishing that a state court's interpretation of the clemency provisions in its constitution and statutes can violate due process in the manner suggested by Petitioner. More specifically, no case from the United States Supreme Court even remotely suggests that a state legislature, acting pursuant to its constitutional and statutory authority, cannot require gubernatorial approval of an executive-branch entity's recommendation for commutation or clemency. Pizzuto also has not pointed to any finding of fact that he contends is unreasonable. Accordingly, Pizzuto's due process claim fails on the merits under 28 U.S.C. § 2254(d).

## CONCLUSION

Pizzuto's habeas claim is not procedurally defaulted. However, it essentially alleges that the Idaho Supreme Court misinterpreted Idaho law. Because the state court's decision was neither untenable nor a scheme to evade federal review, Petitioner's state law claim is not cognizable. And, even if the claim were cognizable, it would fail on the merits because the Idaho Supreme Court's rejection of Petitioner's claim was not unreasonable under 28 U.S.C. § 2254(d). Therefore, the Court must dismiss the Petition.

## ORDER

**IT IS ORDERED:**

1.      Respondent's Motion for Summary Dismissal (Dkt. 29) is

GRANTED.

2.      The Court does not find its resolution of this habeas matter to be

reasonably debatable, and a certificate of appealability will not issue.

*See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section

2254 Cases.

3.      The Court grants a certificate of appealability on the question whether

Petitioner's instant habeas claim is noncognizable because it is based

entirely on Idaho state law.

DATED: March 29, 2024

_____

B. Lynn Winmill
U.S. District Court Judge